IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EQUABLE ASCENT FINANCIAL, LLC.,** 1120 W. Lake Cook Road Buffalo Grove, IL 60089, | : | |
| | : | |
| **Plaintiff/Counterclaim Defendant** | : | 11  *4057 |
| | : | |
| **v.** | : | |
| | : | |
| **MARY ANN CRAGGS, Individually And On Behalf Of All Others Similarly Situated,** 320 Maple Street Warminster, PA 18974 | : | CIVIL ACTION |
| | : | NO. 11-cv- |
| | : | |
| **Defendant/Counterclaim Plaintiffs** | : | |
| | : | |
| **v.** | : | REMOVED FROM COURT OF COMMON PLEAS OF PLEAS BUCKS COUNTY NO.  2011-04765 |
| | : | |
| **EQUABLE ASCENT FINANCIAL, LLC.,** 1120 W. Lake Cook Road Buffalo Grove, IL 60089 | : | |
| | : | |
| **And** | : | |
| | : | |
| **EDWIN A. ABRAHAMSEN & ASSOC., MICHAEL F. RATCHFORD, ESQUIRE, HEATHER K. WOODRUFF, ESQUIRE,** 120 North Keyser Avenue Scranton, PA. 18504, | : | |
| | : | |
| **Counterclaim Defendants** | : | |

**ANSWER TO COMPLAINT AND COUNTERCLAIM CLASS ACTION
COMPLAINT IN CIVIL ACTION**

I.    **ANSWER TO COMPLAINT**

1.    On belief, admitted.

2.      Admitted.  By way of further response, defendant, Mary Ann Craggs ("Craggs") is hereinafter referred to as Craggs or Counterclaim Plaintiff.

3.      On belief, admitted.

4.      Denied as not true.  By way of further response, the referenced credit card was not issued by JP Morgan Chase Bank (hereinafter referred to as "JP Morgan").

5.      Admitted in part, denied in part.  On belief the said credit card debt was purchased by Chase Bank USA from the Federal Deposit Insurance Corporation or from Washington Mutual Bank, or an affiliate thereof.  By way of further response, there is no indication or proof of assignment of the said debt from Chase Bank/JP Morgan to Equable Ascent Financial, LLC (hereinafter referred to as "Equable" or "Counterclaim Defendant"), and strict proof is demanded.

6.      Denied.  The said Exhibit "A" to the Complaint is not the applicable credit card agreement, constituting a material and false representation.  *See* New Matter and Counterclaims below.

7.      Denied as stated.  Craggs never had an interest in the subject credit card, and strict proof is demanded.  By way of further response, *see* New Matter and Counterclaims below.

8.      Denied.  *See* New Matter and Counterclaims below.

9.      Denied.  *See* New Matter and Counterclaims below.

10.     Denied as Equable attaches no statement of account of reference to any charges, payments, credits, or the like and strict proof is demanded.

11.     Denied as Equable attaches no statement of account of reference to any charges, payments, credits, or the like and strict proof is demanded.

## II.    **NEW MATTER**

1.    The Complaint has the following failings:

a.    The verification is in violation of <u>Pennsylvania Rule of Civil Procedure</u> ("Pa. R.C.P.") 1024;

b.    At no time was JP Morgan the credit card issuer;

c.    As JP Morgan was not the credit card issuer, the "CardMember Agreement" attached to the Complaint as Exhibit "A" is a false exhibit, with no basis for attachment or inclusion;

d.    The credit card that is the basis for the Complaint was NOT issued by Chase Bank, JP Morgan Chase & Co., or any affiliate thereof;

e.    The "CardMember Agreement" attached to the Complaint as Exhibit "A constitutes an intentional misrepresentation on its face and as an averment;

f.    Craggs made no such application for the identified credit card;

g.    Use of the subject credit card was NOT subject to the terms and conditions of the "CardMember Agreement" attached to the Complaint as Exhibit "A, and constitutes a false representation;

h.    Craggs never used a Chase Bank credit card as designated in the Complaint;

i.    Craggs could not have defaulted on a credit card issued by Chase and as designated in the Complaint.

WHEREFORE, Craggs asks this Honorable Court find in favor of her and against Equable.

## III.    **CLASS ACTION COUNTERCLAIM AND CLAIMS AGAINST EQUABLE AND ATTORNEY DEFENDANTS**

## A.    **INTRODUCTION**

1.      Counterclaim Plaintiff (Mary Ann Craggs) brings this class action on behalf of herself and a nationwide class of similarly situated individuals (the "Class", including, but not limited to, the named sub-classes), as described below.

2.      Counterclaim Defendants (hereinafter collectively referred to as "Counterclaim Defendants") have uniformly engaged in a scheme of illegal and deceptive business practices that violate federal and state law in attempting to collect credit card debt from persons, using false information and documentation, and without proper documentation sufficient to establish and substantiate the cause(s) of action attempted to be the bases for the respective collection actions.

3.      This scheme is carried out by Counterclaim Defendants by means of centrally controlled sets of policies and practices, and the like, and is conspiratorially implemented by and among other entities and persons (co-conspirators) with form documents, form notices, and form complaints, against alleged debtors, yet with knowingly false documentation and without information necessary to justify the cause(s) of action being asserted.

4.      The scheme is carried out knowingly using false and inapplicable documentation indiscriminately provided by Counterclaim Defendants attempting to foist upon the victims the imprimatur of substantiating documentary evidence.

5.      Counterclaim Defendants routinely and conspiratorially participate and engage in the initiation and perpetuation of attempts to collect debt from and against persons the documentation for which is knowingly false, non-existent, or otherwise not

available to substantiate the cause(s) of action asserted in attempting to collect alleged debt obligations.

6.      Attorney Counterclaim Defendants, Edwin A. Abrahamsen & Associates, Michael F. Ratchford, Esquire, and Heather K. Woodruff, Esquire, (all of whom are collectively referred as the "Attorney Defendants"), to justify the collection actions referred to them by credit issuers, debt buyers, and/or holders of credit card, file suit without proper documentation, indiscriminately and knowingly attach incorrect, false, or otherwise irrelevant documentation as exhibits to complaints with the belief that the consumer will not further question or investigate the efficacy of the complaint and exhibits.

7.      Furthermore, all Counterclaim Defendants institute litigation with the knowledge that there is no backup documentation to substantiate a contractual agreement setting forth the terms and conditions of credit card usage, nor are any signed documents available, such as applications.

8.      In the case of the individual Counterclaim Plaintiff, Craggs, the Attorney Defendants, filed  Complaints which attached "Cardmember Agreements" (the "Agreements") which clearly are not the applicable operative agreements, but are apparently forms of agreement that are "available", "convenient", and the like to attach as exhibits.  The attached Agreements do not at all correlate to the respective bases for the respective law suits, and could not have been the operative Agreements.

9.      Counterclaim Plaintiff alleges that these practices, as more fully discussed below, constitute violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et seq* ("FDCPA"), and state statutes and common law.

5

10.     The "Attorney Defendants" have their principal place of business in the Commonwealth of Pennsylvania.

11.     Counterclaim Plaintiff seeks injunctive relief to prevent the continuation and recurrence of the challenged conduct, and to assure uniform standards by which Counterclaim Defendants will not seek collection from consumers knowingly using false documentation and knowingly without sufficient backup documentation to substantiate the claims asserted in the complaints filed throughout the nation.

12.     Counterclaim Plaintiff also seeks restitution for damages, including, but not limited to, costs incurred, collections made, attorney's fees and costs, statutory damages, punitive damages, and whatever other relief this Court may deem appropriate.

### B.     JURISDICTION AND VENUE

13.     Jurisdiction is upon this Court pursuant to 15 U.S.C. § 1692k(d) ("FDCPA").

14.     Venue is appropriate in this district as the violations underlying this action were made in this District; all defendants conduct business in this district.

### C.     THE PARTIES

15.     Counterclaim Plaintiff, Mary Ann Craggs, is a citizen and resident of the Commonwealth of Pennsylvania, and resides at the address set forth in the caption.

16.     Counterclaim Defendant, Equable, is a "debt collector" as that term is defined by 15 U.S.C. §1692(a)(6), and is a "debt buyer" in that it purchases debt from predecessors in interest at amounts significantly less than the debt and attempts to collect thereon.  Its address is as set forth in the caption hereto.

6

17.     Although not a named Additional Defendant at this time, JP Morgan is a "debt collector" as that term is defined in 15 U.S.C. §1692(a)(6), for the reason that the credit card obligation alleged against Craggs was transferred to JP Morgan from Washington Mutual Bank ("WAMU") (vis-à-vis the Federal Deposit Insurance Corporation) during a period of time when Craggs was in default of her obligations to WAMU.  Craggs reserves the right to add JP Morgan if discovery determines as involvement with the Counterclaim Defendants indicating culpability in violating federal and state law.

18.     JP Morgan is, itself, a credit card, issuer however, in the instant case, JP Morgan is a "debt collector", with its principal place of business as set forth in the caption.

19.     Attorney Defendants are comprised of Abrahamsen & Associates the law firm employing defendants, Michael F. Ratchford, Esquire and Heather K. Woodruff, Esquire, all of whose addresses are set forth in the caption hereto.

20.     The Attorney Defendants are "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6).

D.     **SUMMARY STATEMENT OF THE CASE**

21.     This case arises from a scheme concocted and perpetuated by Counterclaim Defendants, as described in the following scenario:

> When counterclaim defendants engage in the initiation and perpetuation of credit card collection law suits, exhibits intended to reflect a contractual undertaking between the parties are misrepresentations in that the exhibits are indiscriminately chosen and attached to the complaints regardless of their inapplicability to the actual defendant; that is, the exhibited Agreements are false representations of any Agreement entered into by the parties.  Furthermore, law suits are initiated and perpetuated by counterclaim defendants even though the retention policies and manifestation of those policies preclude the availability of signed applications,

credit card purchase receipts and other evidences of purchases and credits.  In other words, there is spoiliation.

22.    Basically, therefore, Counterclaim Defendants are, at all times relevant, aware that they have no contractual backup or evidence of alleged debtors' debt, yet they nonetheless prosecute these actions.

23.    In too many cases, the wronged consumers – those whom the United States Congress has referenced as "the least sophisticated consumers" - succumb to the perceived power and ostensible computer-accuracy of the creditors and debt collectors, and these improperly named litigant-defendants pay or permit judgments to be achieved against them.  Otherwise, these wronged consumers are forced to seek counsel at a financial cost.

24.    These acts by Counterclaim Defendants have violated and continue to violate federal and state law, including common law, and Counterclaim Plaintiff and the members of the Class have suffered damages as a result.

### E.    CLASS ACTION ALLEGATIONS

25.    This case is properly maintainable as a nationwide Class action pursuant to and in accordance with Federal Rule of Civil Procedure ("F.R.C.P."), Rule 23(a), and 28 U.S.C. 1332(d), *inter alia*:

(1)    On belief, the Class is so numerous that joinder of all members is impractical.  Although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering at least in the thousands.

(2)    There are substantial questions of law and fact common to the Class.

(3)     The claims of the representative Counterclaim Plaintiff are typical of the claims of the members of the Class.

(4)     The representative Counterclaim Plaintiff will fairly and adequately protect the interests of the Class under the criteria set forth in F.R.C.P. 23.

(5)     A class action under the circumstances discussed herein provides the most fair and efficient method for adjudication of the controversy under the criteria set forth in F.R.C.P. 23.

26.     This case is properly maintainable as a Class action pursuant to and in accordance with F.R.C.P. 23(b)(3).

a.     The issues of fact are common to the members of the Class, as required by Local Rule of Civil Procedure ("Local Rule") for the Eastern District of Pennsylvania, 23.1(b)(2)(D).

b.     The questions of law are common to the members of the Class, as required by Local Rule 23.1(b)(2)D).

c.     The questions of law and the questions of fact predominate for the Class over any questions of law and/or fact affecting only individual members of the Class.

d.     A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class are overwhelmingly predominant.

e.     As the questions of law and of fact are common to the members of the Class, and considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

    f.  There is no reason why the litigation should not proceed in this particular forum.

    g.  There are no unusual difficulties foreseen to be encountered in the management of this Class action.

    h.  Counterclaim Plaintiff is aware of similar actions involving similar issues with the same different defendants having been filed in the United States District Court for the Eastern District of Pennsylvania, to wit:

    (i)  *Henner, et al. v . Apothaker & Associates, et al.*, U.S.D.C, E.D. Pa., No. 10-cv-05765 MSG[1];

    (ii)  *Trimble v. Discover Bank, et al.*, U.S.D.C., E.D. Pa. No. 11-cv-01069 MSG; and

    (iii)  *Fratz, et al. v. Capital One Bank, et al.*, U.S.D.C., E.D. Pa. No. 11-02577 MSG.

    i.  The claims by Counterclaim Plaintiff, herself, and for and on behalf of the members of the Class, are justified as a Class action for the reason that, although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering at least in the thousands on a nationwide basis.

  27.  A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class is overwhelmingly predominant.

---

[1] This case was settled on an individual basis.

28.    As the questions of law and of fact are common to the members of the Class, and considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

29.    The claims by the Counterclaim Plaintiff, for herself and for and on behalf of the members of the Class, are justified as a Class action for the reason that the causes of action for the Counterclaim Plaintiff are the same causes of action for all of the members of the Class derived from the following issues:

a.    Whether Counterclaim Defendants, in initiating and perpetuating collection law suits, have wrongfully and/or knowingly done so regardless of the knowing lack corroborating documents or evidence available to substantiate the claims asserted;

b.    Whether Counterclaim Defendants, Equable and JP Morgan, knowingly have retention policies that result in destruction of documents reasonably foreseen to be necessary in litigation to collect credit card debt, such as the signed applications for the issuance of a credit card;

c.    Whether Counterclaim Defendants have a uniform policy of attaching and misrepresenting the attached Agreement as the applicable and governing contract between the parties, which agreements bear no relationship to the respective members of the Class;

d.    Whether Counterclaim Defendants conspire one with the other to proffer the misrepresentations to the consumer debtors being sued;

e.    Whether these acts and actions are violative of the FDCPA;

f.     Whether these acts and actions described above are violative of the consumer protection statutes of the Commonwealth of Pennsylvania;

g.     Whether Counterclaim Plaintiff and the members of the Class incurred damages as a result of these violations and are Counterclaim Defendants liable therefor?

h.     Whether Counterclaim Plaintiff and the members of the Class are entitled to injunctive relief, restitution, interest thereon, attorney's fees, punitive damages, statutory damages and other damages as a result of the improper attempts to collect credit card debt from non-liable persons?

**F.     THE CLASS**

30.    The above-named Counterclaim Plaintiff brings this action on behalf of herself and:

a.     Sub-Class I:

All persons who have been the subject of collection law suits brought by Counterclaim Defendants for which the Counterclaim Defendants attach as corroborative exhibits written agreements represented by Counterclaim Defendants as the operative written agreements governing the parties and serving as the written basis for the liability asserted against the alleged debtors/consumers, which attached exhibits are clearly and knowingly inapplicable, and do not represent any contractual relationship between the parties, and, furthermore, which agreements constitute intentional misrepresentation to the respective Courts and to the defendants named in the litigation.

b.     Sub-Class II:

All persons who have been the subject of collection law suits brought by or on behalf of Counterclaim Defendants for which Counterclaim Defendants, prior to the filing of the said law suits, have destroyed documents crucial to the defense of the law suits, including, but not limited to, the signed applications therefor.

### G.    PLAINTIFFS' FACTUAL STATEMENT

31.    In the individual case of the Counterclaim Plaintiff, Mary Ann Craggs:

a.    On May 25, 2011, the Attorney Defendants, on behalf of Equable, filed a collection law suit in the County of Bucks, Pennsylvania, docketed in the Court of Common Pleas as *Equable Ascent Financial, LLC. v. Maryann Craggs*, No. 2011-04765. *See* Exhibit "1', a true and correct copy of the docket entries.

b.    A true and correct copy of the Complaint is attached hereto as Exhibit "2".

c.    The Complaint attached as its only Exhibit, an alleged "Cardmember Agreement". *See* Exhibit "A" to Exhibit "2".

d.    Mary Ann Craggs was served by the Sheriff of Bucks County on June 8, 2011. *See* Exhibit "1"

e.    Upon review of the Complaint, Exhibit "2" hereto, Craggs acted to remove the case to federal court and file this Class Action Civil Action Complaint.

f.    The Complaint underlying this counterclaim sets forth the following, as relevant to this captioned cause of action:

(i)    The verification is in violation of <u>Pennsylvania Rule of Civil Procedure</u> ("Pa. R.C.P.") 1024;

(ii)    At no time was JP Morgan the credit card issuer;

(iii)    As JP Morgan was not the credit card issuer, the "CardMember Agreement" attached to the Complaint as Exhibit "A" is a false exhibit, with no basis for attachment or inclusion;

13

(iv)    The credit card that is the basis for the Complaint was NOT issued by Chase Bank, JP Morgan Chase & Co., or any affiliate thereof;

(v)    The "CardMember Agreement" attached to the Complaint as Exhibit "A constitutes an intentional misrepresentation on its face and as an averment;

(vi)    Craggs made no such application for the identified credit card;

(vii)    Use of the subject credit card was NOT subject to the terms and conditions of the "CardMember Agreement" attached to the Complaint as Exhibit "A, and constitutes a false representation;

(viii)    Craggs never used a Chase Bank credit card as designated in the Complaint;

i.    Craggs could not have defaulted on a credit card issued by Chase and as designated in the Complaint.

j.    Equable and the Attorney Defendants have had two (2) bites of the proverbial apple in determining the efficacy of their claim:  They sued Craggs in District Justice Court, and lost to Mrs. Craggs.

k.    The Attorney Defendants and Equable then sued in the Court of Common Pleas of Bucks County.

j.    Counterclaim Defendants nonetheless have continued to perpetrate the misrepresentations proffered in the Complaint.

32.    Clearly, the attached agreement is false and is not applicable to the account of Craggs and the members of the Class.

33.     It is believed and is therefore averred that Equable has a retention policy that precludes the availability of such necessary documentation as the real contract, the application for credit, statements, invoices, and the like.

34.     The retention policy is to avoid having to present contradictory evidence to the false evidence provided in the Complaint.

35.     This constitutes spoiliation.

36.     At all times relevant, it is asserted that Counterclaim Defendants each and all are and have been aware of this spoiliation policy.

37.     These wrongful collection activities are intended by the Counterclaim Defendant to secure collection from those whom the United States Congress has defined as the "least sophisticated consumer".

38.     These wrongful collection activities include, but are not limited to:

a.     Attaching as exhibits to complaint documentation knowingly not pertinent or relevant, constituting misrepresentation, at least; and

b.     Filing law suits knowing that the retention policy precludes the availability crucial documentation vital to the consumers'/debtors defense of the litigation.

39.     Finally, Exhibit "A" to the Complaint, states, at its end, that: "Copyright © 2004. JP Morgan Chase & Co.  All rights reserved."

40.     Thus, the information evidencing the falsity of the documentation and the basis of the Complaint and believed to be hundreds, and maybe thousands, of cases, is easily and readily available to the Counterclaim Defendants by the exercise of minimal due diligence.

41.     Plaintiff was caused to utilize the services of the undersigned attorney to exculpate Plaintiff from these wrongful collection efforts and paid an initial fee of $350.00.

**H.     COMMON CLASS ELEMENTS**

42.     Plaintiff and each member of the Class are the subject of collection efforts to collect debts for which there is no corroborative evidence in the form of a valid Cardmember Agreement and or a signed application, and possibly other relevant documentation.

43.     The law suits against Plaintiff and the members of the Class with their knowingly wrong attachments and the knowing lack of corroborative evidence such as the signed applications because of the known retention policy constitute violations of the FDCPA.

44.     All of these similar law suits are and have been in violation of various state consumer protection statutes.

45.     As to the individual Plaintiff, the attempts to collect and/or the collection of these wrongful charges are in violation of the provisions of 73 P.S. § 2270.4(b) including, but not limited to sub-section (6) thereof:

> "A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
> (i) The collection of any amount, including interest, fee, charge or expense incidental to the principal obligation, **unless such amount is expressly authorized by the agreement creating the debt or permitted by law."** (Emphasis Supplied.)

46.     These issues of fact, therefore, for all members of the Class are the same as set forth above, with minor, not substantial, variation.

47.     The questions of law governing the rights of each member of the respective Class are the same as they relate to Plaintiff, and involve the all-pervasive issue as to the legality in law of an attempt to collect credit card debt utilizing wrong documentation therefor, correlated with the knowledge that critical documentation that may benefit the consumers is the subject of spoiliation policies.

48.     Counterclaim Defendants engage in a uniform scheme and course of conduct to inflate their respective profits by routinely attempting to collect and collecting credit card debt by filing law suits utilizing and misrepresenting wrong documentation and knowingly without documentation which, as evidence, may have benefitted the consumer/debtors

## I.      CAUSES OF ACTION

### COUNT I – VIOLATION OF 15 U.S.C. § 1692a, *ET SEQ.*
### CLASS ACTION
### PLAINTIFF, *ET AL.* V. COUNTERCLAIM DEFENDANTS

49.     The averments of paragraphs one through and including sixty above are incorporated herein by reference.

50.     The Counterclaim Defendants are a "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6).

51.     Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1692a(3).

52.     15 U.S.C. § 1692e provides:  "A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt."  In fact, the Counterclaim Defendants, utilizing the false Cardmember Agreements and false assertions in the Complaint have violated:

      a.     15 U.S.C. § 1692e(2)(A):     The character, amount and legal status of the debt for which the attached agreement is a false representation of the basis for the debt;

      b.     15 U.S.C. § 1692e(2)(B):     The false representation that the attached Cardmember Agreements representing the basis for the amounts claimed to be due and which may be lawfully received is a violation of the FDCPA.  There are false representations as Counterclaim Defendants knowingly have no such right contractual rights against Plaintiff  pursuant to the false Cardmember Agreement;

      c.     15 U.S.C. § 1692e(10):     False and deceptive means to collect or to attempt to collect these debts to the extent that the cited basis for the debt is false.

53.     15 U.S.C. § 1692f, provides:  "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  The following conduct by Counterclaim Defendants evidences the violation by them of the FDCPA:

      a.     Counterclaim Defendants used and continue to use unfair and unconscionable means to collect or attempt to collect debts based on law suits with false documentation attached and with false assertions therein and which are being utilized to fool the consumers into believing that the false representations are sound bases for the law suits.

      b.     15 U.S.C. § 1692f(1): The collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law".  The debts attempted to be collected and/or have been collected are not authorized or permitted by the attached false document contract.

54.    15 U.S.C. § 1692k specifically authorizes a private action to recover damages sustained because of these violations.

55.    15 U.S.C. § 1692k permits class actions.

57.    The acts and actions that are in violation of the FDCPA occurred within one year of the filing of this Complaint.

58.    The acts and actions by the "Debt Collector" Counterclaim Defendants were clearly knowing and intentional.

59.    The specific acts and action by Counterclaim Defendants constituting the bases for this Complaint are set forth above, and are incorporated herein by reference. *See* paragraphs 31 through and including 39, *inter alia*, above, correlated with the attached exhibits, for the detail of these acts and actions, including, the time, date, place author and the specificity of the false communications, misrepresentations and violations of the FDCPA of which Plaintiff complains.

60.    It is believed and therefore averred that the Counterclaim Defendants facilitated these wrongful actions for the purpose of enhancing their collections, regardless of the falsity of the attached Cardmember Agreements and the fact that the retention policy of Equable precludes the availability of establishing specific evidence in favor of Plaintiff, Craggs, by the fact that evidence has been spoiliated.

61.    A simple reasonable review of the basic documentation as to each account which is the subject of such law suits would have divulged to Counterclaim Defendant that the attached Cardmember Agreements were not applicable.

62.     A reasonable investigation would have revealed to the Counterclaim Attorney Defendants that the Cardmember Agreements were false representations that did not cover or concern themselves with the Plaintiff or her alleged debt.

63.     A reasonable investigation would have revealed that the predecessor to Equable and Equable had not retained documentation relevant and crucial to a collection law suit, including, but not limited to, any application signed by the alleged Debtor.[2]

64.     Plaintiff suffered damages in the form of the respective costs to secure legal representation to respond to the complaint.

65.     It is believed and therefore averred that Plaintiff and the members of the Class are entitled to recover damages as a result of the violations of the FDCPA by Counterclaim Defendants in the form of compensatory damages, including, but not limited to, restitution to members of the Class who paid Defendant, statutory damages, attorney's fees and costs and interest.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to

A.     Certifying the Class described, and appointing Plaintiff as representative of the Class, and the undersigned as Class counsel;

B.     Requiring that the "Debt Collectors" Counterclaim Defendants pay compensatory damages, restitution, statutory damages, attorney's fees and experts' fees, and punitive damages as appropriate; and

---

[2] The undersigned has been extensively involved in credit card collection litigation, and it is most obvious that the credit card issuers and/or their successors in interest retain copies of monthly statements which, in each case, may involve dozens upon dozens of pages of exhibits. However, the credit card issuers and their respective successors in interest fail to keep that one page document comprising the signed application therefor, or the like.

C.   Enjoining the Defendants from conducting such violative activity in the future, and

D.   Granting such other relief as the Court may deem appropriate.

## COUNT II - UNFAIR AND DECEPTIVE TRADE PRACTICES
## PLAINTIFF V. COUNTERCLAIM DEFENDANTS

65.   The averments of paragraphs one through and including sixty-four above are incorporated herein by reference as if set forth herein at length.

66.   The Counterclaim Defendants are believed citizens of Pennsylvania and Illinois with their respective principal places of business as set forth in the caption.

67.   Counterclaim Defendants have advertised, offered for sale or distribution its respective products and services.

68.   Counterclaim Defendants have engaged in unfair and/or deceptive acts and trade practices, unfair methods of competition, and have practiced other unfair or deceptive acts or practices directly or indirectly adversely affecting the members of the Class, as described above. *See* paragraphs 31 through and including 39, above and the attached exhibits, incorporated herein by reference as if set forth herein at length.  The acts and practices include, but are not limited to:

a.   Knowingly making false and misleading representations of fact, in writing;

b.   Knowingly misrepresenting that the attached Cardmember Agreements govern the basis of the law suits and the legal relationship between the parties;

c.   Utilizing false and misleading characterizations for the amount claims to be due, intending to mislead the consumer;

d.   Taking any action that cannot legally be taken or justified;

e        Otherwise engaging in other fraudulent conduct "which creates a likelihood of confusion or of misunderstanding";

f.        Engaging in any other conduct deemed to constitute unfair trade practices, unfair methods of competition, or other unfair or deceptive acts or practices.

69\.    The facts constituting the basis for these unfair trade practices are as set forth above, and specifically in paragraphs 31 through and including 39, and the attached exhibits. Counterclaim Defendants have engaged in other activity further exacerbating its participation in unfair trade practices.

70.    These unfair trade practices in which Counterclaim Defendants have participated are all intertwined with the factors constituting misrepresentation:

a.        By acts, Counterclaim Defendants have made representations of a material nature that Counterclaim Defendants knew (or should have known) were misrepresentations.  These misrepresentations were made to Plaintiff and the members of the Class.

b.        These misrepresentations were made with the intent to cause Plaintiff, *et al.*, to reasonably rely to their detriment, which occurred, causing Plaintiff to suffer damage, including, but not limited to, paying sums of money for legal representation, and/or paying sums of money to pay for the debt Counterclaim Defendants claim Plaintiff owes misrepresenting the legal basis therefor;

c.        Filing law suits with the knowledge that corroborative evidence that may benefit Plaintiff has been destroyed because of the "retention" policies.

d.      These misrepresentations were made with the intent to cause Plaintiff, *et al.*, to reasonably rely to their detriment, which occurred, causing Plaintiff to suffer damage, including, but not limited to, attorney fees to contest the complaints.

e.      Because of Counterclaim Defendants' misrepresentations and Plaintiff's reasonable reliance thereon, Plaintiff suffered damages, including the necessary legal representation.

f.      The representations made by Counterclaim Defendants were false, constituting misrepresentations.

g.      These misrepresentations were manifested by mischaracterizations in writings.

h.      Plaintiff reasonably relied upon these misrepresentations to her detriment.

i.      As a result of this reliance, Plaintiff has suffered additional damage, including the payment of attorney's fees.

71.     It is believed and therefore averred that the misrepresentations were intentional, or at least so recklessly made as to constitute intentional fraudulent statements.

72.     Counterclaim Defendants have, therefore, engaged in unfair trade practices to consumers. As such, Counterclaim Defendants are in violation of or has violated Pennsylvania Statutes 73 P.S. § 201-1, *et seq.*, and 73 P.S. § 2270.4(b)(5) ( and 73 P.S. § 2270.5, and the consumer statutes of other states.

73.     Defendants have, therefore, engaged in misrepresentation and fraudulent misrepresentation, causing Plaintiffs to suffer damages as provided by statute.

WHEREFORE, Plaintiff pray this Honorable Court grant appropriate

damages, including, but not limited to compensatory damages, statutory damages, treble

damages, punitive damages, attorney's fees and costs, interest and such other relief as the

Court may deem appropriate.

Respectfully submitted:

Stuart A. Eisenberg
Attorney I.D. 12433
Carol B. McCullough
Attorney I.D. 56424
MCCULLOUGH EISENBERG, LLC
Suite 201
530 West Street Road
Warminster, PA 18974
1-215-957-6411
Attorney for Plaintiff